1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALLEN RAY RUSSELL II,

          Petitioner,

     v.

TIMOTHY WENGLER,

          Respondent.

Case No. C07-5506FDB-KLS

REPORT AND
RECOMMENDATION

Noted for September 12, 2008

Petitioner is a state prisoner currently incarcerated at the Prairie Correctional Facility, located in Appleton, Minnesota. This matter is before the Court on his petition for writ of *habeas corpus* filed with this court pursuant to 28 U.S.C. § 2254. (Dkt. #6 and #14). Respondent has answered the petition and filed the relevant state court records, and petitioner has replied thereto. Thus, the case is ripe for review and a decision by the Court. For the reasons set forth below, the undersigned recommends the Court deny the petition.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Petitioner was found guilty of rape in the second degree in 2002. Respondent's Submission of Relevant State Court Record ("Record"), Exhibit 1, p. 1 (Dkt. #31). He was sentenced to a minimum prison term of 137 months and a maximum prison term of life. <u>Id.</u> at p. 2. The Washington State Court of Appeals, Division II, summarized the relevant facts of this case as follows:

> In March 2002, Russell met C.A.T., a 20-year old female, while visiting friends
> who lived next door to C.A.T.'s Bremerton apartment. They exchanged phone

numbers, and he began calling C.A.T. several times a week. During the phone calls, they would discuss their daily lives, and he would ask her to "go out" or "hang out." She would reply that "[she] would just be friends."

On April 24, Russell called and asked whether C.A.T. wanted to "hang out" with him and his friends. She agreed but reiterated that she just wanted to be friends. He picked her up and they went to a friend's apartment, stopping on the way to buy malt liquor.

When they arrived at the apartment, he, she, a man named Mike, and another man named Courtney played video games and listened to music. Then they played a drinking game for about half an hour. When the drinking game ended, they went out on the balcony and drank beer through a "beer bong," a device that facilitates the rapid consumption of beer. After awhile, C.A.T. went back in the apartment, sat down on the couch, and passed out for a couple of seconds or minutes.

When C.A.T. awoke, Russell grabbed her hand and began lightly pulling her toward the bedroom. She said no, and Russell released her hand. He returned about five minutes later, grabbed her hand again, and told her to go to the bedroom. Although she again said no, he continued pulling and said that he "needed to talk to [her]."

They entered the bedroom, and Russell closed the door. She sat on the edge of the bed with her feet on the floor. Russell stood in front of her and asked if he could kiss her. She said "No." "I thought I told you I just wanted to be friends." He tried to kiss her, and she pushed him away, saying, "No. Leave me alone. I don't want to do this." He put his hands on her shoulder, laid her down on the bed, and asked her to remove her clothes. She again said, "No. I don't want to do this." He unbuttoned her pants, but she re-buttoned them. He removed her shoes and asked her to arch her back so he could remove her pants. She began kicking and again said she did not "want to do anything with [him]." She was feeling drowsy, dizzy and nauseous, and was unable to get up.

Russell got on top of her and began sexual intercourse that lasted for a couple of minutes. She kicked her legs a little, tried to push him off, and yelled softly for help. Finally, someone knocked on the door and told Russell he had a phone call. He got dressed and left the room.

C.A.T. got dressed and left the bedroom. Crying and wiping her eyes, she asked Mike if she could use the phone, and he assented. She called an ex-boyfriend for a ride home but was unable to give him directions to where she was. She then called another friend, Bridget, but was again unable to give directions. Finally, she asked Mike to give directions to Eric, Bridget's husband, and Mike did.

While she was making these calls, Russell and Courtney were outside on the balcony. They came back in, and Russell observed she was wiping her eyes. He asked what was wrong, and she replied "[n]othing."

Five minutes later, all four of them walked to the corner where she was to meet Bridget and Bridget's husband. On the way, Russell asked if Bridget could give him a ride too. C.A.T. said she would ask. When Bridget and Eric pulled up, however, she ran to their car, whispered to Bridget she had been raped, and got into the back seat. As the car quickly pulled away, she pointed out Russell as the man who had raped her.

The police were called, and officers spoke with C.A.T. She then went to Harrison Hospital, where she was examined by Nurse Brinias. Brinias did a sexual assault examination, which includes the collection of forensic evidence and the taking of colposcopic pictures. She found blunt force trauma to C.A.T.'s hymen.

After arriving at the hospital but before being examined, C.A.T. had called her mother and said she had been raped. Her mother then arranged for Russell and the police to meet at a nearby convenience store, where Russell at first denied knowing C.A.T. When pressed, however, he said he had seen C.A.T. for 5 or 10 minutes earlier that evening. The police did not arrest him at that time.

Perhaps a half hour later, Russell called C.A.T. She answered but then handed the phone to her mother. Thinking that he was still talking to C.A.T., he asked why she

was saying these things, that she knew nothing happened, and that they did not have sex.

The next day, Officer Knott questioned Russell. Russell now admitted a sexual encounter but alleged that C.A.T. had initiated it. He said that after she was drinking from the beer bong, she returned inside, sat on the couch, but soon went to the bathroom. When she came out of the bathroom, she called to him from the hallway, and, when he responded, whispered in his ear that she needed to speak with him in the bedroom. They went into the bedroom and began "making out." She asked if he had a condom, took off her clothes, and fondled his genitals. She then got on top of him, and they had sexual intercourse. When it was over, she said she had experienced two orgasms.

The State charged Russell with second degree rape.[1] At trial, the State called Nurse Dacus as an expert witness. She has a master's degree in nursing and is a licensed nurse practitioner. She was familiar with scientific studies of female anatomy during sexual arousal and with the physiological changes that occur during the different stages of a woman's life. She had conducted or overseen more than 1000 non-sexual-assault examinations and more than 300 sexual assault examinations. She had never seen trauma to the hymen in a non-sexual assault examination. She believed that such trauma generally does not occur during consensual sex because of the voluntary and involuntary physical responses that generally accompany intercourse: the woman tilts her pelvis so the penis can enter without trauma, and her genitalia are lubricated. When the prosecutor asked if she had an opinion on whether Brinias's finding of trauma to C.A.T.'s hymen was "consistent with nonconsensual sex [,]" the defense objected, saying "[no] foundation," but the trial court overruled. Dacus then answered that she had an opinion and that the trauma to C.A.T.'s hymen "was consistent with nonconsensual sex." The jury convicted, the court imposed sentence for second degree rape, and this appeal followed.

Id., Exhibit 2, pp. 1-5 (internal citations and footnotes omitted).

Petitioner filed a direct appeal of his conviction, which the Washington State Court of Appeals, Division II, denied on May 4, 2004, affirming the conviction. Id., Exhibits 2-4. Petitioner filed a petition for review of that decision with the Washington State Supreme Court, which was denied on February 1, 2005. Id., Exhibits 6-7. On February 8, 2005, the court of appeals issued its mandate, stating that it's May 4, 2004 decision became the decision terminating review on February 1, 2005. Id., Exhibit 8.

On January 26, 2006, petitioner filed a personal restraint petition with the Washington State Court of Appeals, which was dismissed on January 9, 2007. Id., Exhibits 9 and 12. Petitioner filed a motion for discretionary review of that dismissal with the Washington State Supreme Court, which was denied by the Washington State Supreme Court Commissioner on June 21, 2007. Id., Exhibits 13-14. Petitioner filed a motion to modify that ruling on July 2, 2007, which the supreme court denied on September 5, 2007. Id., Exhibits 15 and 17. The court of appeals issued its certificate of finality on January 22, 2008, stating that

---

[1]As the court of appeals noted: "The State initially charged third degree rape, then later amended upward to second degree rape. The jury returned verdicts on both, but the trial court sentenced only on second degree rape." Id., Exhibit 2, p. 5, n.10. As such, the court of appeals found the third degree rape not pertinent for purposes of petitioner's direct appeal. Id.

1    it's January 9, 2007 decision became final on September 5, 2007. Id., Exhibit 18.

2        Petitioner filed his federal petition for writ of *habeas corpus* with this Court on September 20,

3    2007. (Dkt. #1 and #5-6).  In his petition, petitioner challenges the legality of his conviction based on the

4    following grounds for federal *habeas corpus* relief:

5        (1)    "Insufficient Evidence."

6        (2)    "Impermissible opinion testimony."

7        (3)    "The trial court erroneously permitted a medical expert to testify outside of the
                area of her expertise."
8
9        (4)    "Ambiguous and erroneous jury instruction."

10       (5)    "Ineffective assistance of counsel."

10   (Dkt. #6).  There appears to be no issue of timeliness concerning the filing of petitioner's federal *habeas*

11   *corpus* petition with this court.  While there are issues with respect to the exhaustion of state remedies

12   concerning grounds (1), (2) and (3) above, as explained below, it appears the state's highest court now

13   would find those grounds to be procedurally barred.  Therefore, after carefully reviewing the petition,

14   respondent's answer, petitioner's reply thereto, and the remaining record, the undersigned recommends

15   that the Court deny the petition for the reasons set forth below.

16                            NO EVIDENTIARY HEARING IS REQUIRED

17       In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody

18   pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be

19   presumed to be correct." 28 U.S.C. § 2254(e)(1).  Under 28 U.S.C. § 2254(e)(1), the petitioner has "the

20   burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

21       Where a petitioner "has diligently sought to develop the factual basis of a claim for habeas relief,

22   but has been denied the opportunity to do so by the state court," an evidentiary hearing in federal court

23   will not be precluded. Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting Cardwell v.

24   Greene, 152 F.3d 331, 337 (4th Cir. 1998)).  On the other hand, if the petitioner fails to develop "the

25   factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim shall not be

26   held, unless the petitioner shows:

27       (A) the claim relies on--

28       (i) a new rule of constitutional law, made retroactive to cases on collateral review by

the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

28 U.S.C. § 2254(e)(2).

An evidentiary hearing "is required when the petitioner's allegations, if proven, would establish the right to relief." Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998). It "is *not* required on issues that can be resolved by reference to the state court record." Id. (emphasis in original). As the Ninth Circuit has stated, "[i]t is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." Id.; United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986) (evidentiary hearing not required if motion, files and records of case conclusively show petitioner is entitled to no relief) (quoting 28 U.S.C. § 2255).

Here, "[t]here is no indication from the arguments presented" by petitioner "that an evidentiary hearing would in any way shed new light on the" grounds for federal *habeas corpus* relief raised in his petition. Totten, 137 F.2d at 1177. Because, as discussed below, the issues raised by petitioner may be resolved based solely on the state court record and he has failed to prove his allegation of constitutional errors, no evidentiary hearing is required.

DISCUSSION

I.    Standard of Review

A federal petition for writ of *habeas corpus* filed on behalf of a person in custody pursuant to a judgment of a state court:

[S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, 28 U.S.C. § 2254(d) "defines two categories of cases" where such relief may be obtained. Williams v. Taylor, 529 U.S. 362, 404 (2000).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams, 529 U.S. at 405-06). A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. Id.

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." Lockyer, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." Id.

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Juan H. V. Allen, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). As noted above, however, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

II.     Scope of Review and Harmless Error

The district court may not "reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, the court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68; see also Smith v. Phillips, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). In addition, for federal *habeas corpus* relief to be granted, the constitutional error must have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation

1    omitted).  In other words, a petitioner is "not entitled to habeas relief based on trial error," unless he or she

2    "can establish that it resulted in 'actual prejudice.'"  Id.

3    III.    Grounds (1), (2) and (3) Are Unexhausted

4         The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of

5    *habeas corpus*.  28 U.S.C. § 2254(b)(1).  If exhaustion is to be waived, it must be waived explicitly by

6    respondent. 28 U.S.C. § 2254(b)(3).  A waiver of exhaustion thus may not be implied or inferred.  A

7    petition can satisfy the exhaustion requirement by providing the highest state court with a full and fair

8    opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S.

9    270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).  Full and fair presentation of

10   claims to the state court requires "full factual development" of the claims in that forum.  Kenney v.

11   Tamayo-Reyes, 504 U.S. 1, 8 (1992).

12        It is not enough that all of the facts necessary to support the federal claim were before the state

13   courts, or that a somewhat similar state law claim was made.  Duncan v. Henry, 513 U.S. 364, 366 (1995)

14   (citing Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982)).  A federal

15   claim is "fairly and fully" presented to the state courts if the claim is presented "(1) to the proper forum,

16   (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."

17   Insyxiengmay v. Morgan, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).  The petitioner

18   "must alert the state courts to the fact that he is asserting a federal claim in order to fairly and fully present

19   the legal basis of the claim."  Id.

20        The claim must be fairly presented in "each appropriate state court," that is, at each level of state

21   review, so as to alert the state "to the federal nature of the claim," and to give it the "opportunity to pass

22   upon and correct" alleged violations of the petitioner's federal rights.  Baldwin v. Reese, 541 U.S. 27, 29

23   (2004) (citations and internal quotation marks omitted); see also Ortberg v. Moody, 961 F.2d 135, 138

24   (9th Cir. 1992).  The federal basis of the claim, furthermore, must be made "explicit" in the state appeal or

25   petition, "either by specifying particular provisions of the federal Constitution or statutes, or by citing to

26   federal case law." Insyxiengmay, 403 F.3d at 668; Baldwin, 541 U.S. at 33.

27        A.    Ground (1)

28        As noted above, petitioner claims in his petition that there was insufficient evidence to convict him

of second degree rape. Specifically, petitioner alleges the evidence did not provide a sufficient basis upon which the government could prove sexual intercourse had occurred by forcible compulsion. Respondent argues petitioner failed to exhaust this ground for federal *habeas corpus* relief, because he did not present it as a federal claim to the state's highest court. The undersigned agrees. Petitioner's appellate counsel did raise the issue of insufficient evidence on direct appeal to the Washington State Court of Appeals, but did not assert it as a federal claim. Record, Exhibit 3, pp. 23-27. That is, no mention was made therein of any federal statute, case law or constitutional provision in support of this claim.

While petitioner *pro se* submitted a statement of additional grounds for review on direct appeal to the Washington State Court of Appeals as well, it too made no mention of any legal authority, federal or otherwise. Id., Exhibit 4. The same is true with respect to the petition for review petitioner filed with the Washington State Supreme Court requesting review of the court of appeals decision. Id., Exhibit 6. In addition, petitioner did not raise the insufficient evidence claim in his personal restraint petition or any of the motions and other filings he submitted in connection therewith.

Petitioner argues he did properly exhaust his first ground for federal *habeas corpus* relief, as well as the second and third grounds. In support of this argument, petitioner first states that he was unaware of any problems there may have been in regard to the federal nature of his claims, because he is ignorant of the law, has a "very minimal" education, and "was whole-heartedly dependant on his appellate counsel, trusting that he was being represented by effective and competent counsel." (Dkt. #32, p. 4). However, the fact that a petitioner may be unfamiliar with the law or suffer from a limited education will not excuse his or her failure to comply with the mandatory exhaustion requirements. See, e.g., Hughes v. Idaho State Board Of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (when *pro se* petitioner is able to apply for post-conviction relief to state court, he or she must be held accountable for failure to timely pursue remedy to state's highest court, and claims of illiteracy and lack of help in appealing post-conviction petition, though unfortunate, is insufficient to excuse failure to exhaust).

Nor will any error on the part of petitioner's counsel short of constitutionally ineffective assistance of counsel excuse default. See McCleskey v. Zant, 499 U.S. 467, 494 (1991). Petitioner has failed to set forth a sufficient basis to establish his appellate counsel provided constitutionally defective representation on direct appeal to the Washington State Court of Appeals. Indeed, appellate counsel presented the court of appeals with a number of issues he argued require reversal of petitioner's conviction. Even if petitioner

could reasonably argue his legal representation on direct appeal was ineffective, petitioner himself was not prevented from raising any additional federal claims he had. Indeed, as noted above, petitioner submitted his own statement of additional grounds for review, and so certainly could have included any such claims at that point. As such, petitioner was not prevented from being able to fully and fairly present his federal claims on direct appeal by any actions, or lack thereof, of his appellate counsel.

Petitioner next argues he gave the Washington State Supreme Court the opportunity to review and consider his first ground for *habeas corpus* relief as a constitutional violation, and therefore that ground is properly exhausted. Specifically, petitioner asserts he quoted and cited to specific United States Supreme Court decisions in arguing that there was insufficient evidence to support forcible compulsion. However, the particular language petitioner points to appears not in his appellate counsel's brief or in his statement of additional grounds for review on direct appeal, but in the motion for discretionary review he filed with the Washington State Supreme Court seeking review of the Washington State Court of Appeals denial of his personal restraint petition. See Record, Exhibit 13, pp. 16-17. Further, that was included as argument in support of petitioner's ineffective assistance of counsel claim, not in support of his claim of insufficient evidence, which appears nowhere in the petition for review.

The Washington State Supreme Court, therefore, was not put on notice that petitioner was raising an insufficient evidence claim here, federal or otherwise. Nor – because the particular claim petitioner raised in his motion for discretionary review was ineffective assistance of counsel – can the Washington State Supreme Court be said to have been fully and fairly presented with the claim of insufficient evidence, and, accordingly, been provided with the opportunity to address it. In addition, even if petitioner's argument did have any merit here, he still did not present it as a federal claim to the Washington State Court of Appeals for its consideration. See Baldwin, 541 U.S. at 29 (federal claim must be fairly presented at each level of state review); Ortberg, 961 F.2d at 138. Accordingly, the undersigned finds petitioner has failed to exhaust his first ground for federal *habeas corpus* relief.

B.    Grounds (2) and (3)

In his second ground for *habeas corpus* relief, petitioner claims that a medical expert witness who testified at his trial provided impermissible opinion testimony regarding whether or not there had been consensual sex. In his third ground for *habeas corpus* relief, petitioner claims that in allowing the expert witness to so testify, the trial court erroneously permitted that witness to testify outside of the area of her

expertise. Respondent again argues petitioner failed to exhaust his state court remedies here, because he did not present the grounds as specifically federal claims. Once more, the undersigned agrees.

Petitioner's appellate counsel raised the above two claims in the brief he filed with the Washington State Court of Appeals on direct appeal. Record, Exhibit 3, pp. 6-23. However, he did not present them as federal claims – i.e., he cited to no federal statutes, constitutional provisions or case law. Neither of these issues was raised by petitioner in the statement of additional grounds for review he submitted *pro se* to the court of appeals or in the petition for review he filed with the Washington State Supreme Court. Further, petitioner did not raise them in his personal restraint petition, motion for discretionary review thereof, or in any of the other filings he submitted in regard thereto. Accordingly, the undersigned finds that not only did petitioner not adequately present them as federal claims, but he also failed to present them at all levels of state review, namely to the state's highest court.

Petitioner appears to argue that because the state responded to ground (2) in a "federal manner" in response to his direct appeal, then he should be found to have exhausted his state court remedies in regard thereto. Specifically, petitioner's argument seems to be that by using the words "constitutional" and "unconstitutional" in its briefing, the state acknowledged the federal nature of petitioner's claims. (Dkt. #32, pp. 5-6). Petitioner further argues his appellate counsel presented this ground as a "constitutional claim," thereby also exhausting his state court remedies here, by using the word "constitutional" as well. This argument, however, is completely without merit.

First, it is quite clear from the state's briefing on these specific claims, that in using such words or in discussing whether a particular matter was constitutional or not, it was referring to state constitutional issues, as nowhere in that briefing did the state reference federal law or constitutional provisions. See (Dkt. #5). The same is true with respect to the brief submitted by petitioner's appellate counsel. See (Dkt. #3). Second, labeling something as being "constitutional" and "unconstitutional" alone is insufficient to establish exhaustion for federal *habeas corpus* purposes. See Hivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing Gray v. Netherland, 518 U.S. 152, 162-63 (1996)) (merely stating that one has been unconstitutionally convicted or making general appeals to broad constitutional principals, such as due process, equal protection, and right to a fair trial is insufficient to establish exhaustion).

Petitioner further argues, however, that his appellate counsel did fairly and fully present as federal claims grounds (2) and (3) by citing to one federal case, United States v. Boney, 907 F.2d 624 (D.C. Cir.

1992), in the brief he submitted to the Washington State Court of Appeals on direct appeal. (Dkt. #3, p.

11). That citation, though, came last a series of Washington State Court of Appeals cases appellate that

counsel had cited, which in turn were contained in a quote taken from yet another Washington State Court

of Appeals case discussing an evidentiary issue that occurred in a state criminal trial. This hardly evinces

an intent on the part of petitioner's appellate counsel to raise a federal constitutional issue here, nor would

the Washington State Court of Appeals have been expected to view it as such. Even if it could be viewed

as such, however, petitioner did not cite to this or any other federal cases in the petition for review he filed

with the Washington State Supreme Court.

IV.     Grounds (1), (2) and (3) Are Now Procedurally Defaulted

When a petitioner has defaulted on his claims in state court, principles of federalism, comity, and

the orderly administration of criminal justice require that federal courts forego the exercise of their *habeas

corpus* power. Francis v. Henderson, 425 U.S. 536, 538-39 (1976). Rules that promote prompt resolution

of all constitutional claims at the appropriate state court proceeding must be respected by a federal *habeas*

court. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). Thus, federal courts "may not adjudicate

mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims."

Rhines v. Weber, 544 U.S. 269, 273 (2005). Instead, such petitions "must be dismissed for failure to

completely exhaust available state remedies." Jefferson v. Budge, 419 F.3d 1013, 2005 WL 1949886 *2

(9th Cir. 2005) (citing Rose v. Lundy, 455 U.S. 509, 518-22 (1982)).

As just discussed, the first, second and third grounds for seeking federal *habeas corpus* relief have

not been fully exhausted here. Thus, petitioner has presented a mixed petition containing both exhausted

and unexhausted federal claims, which, also as just discussed, in itself requires dismissal of the petition.

Before doing so, generally the Court is required to provide petitioner with "the choice of returning to state

court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted

claims to the district court." Id.; see also Rhines, 544 U.S. at 278; Tillema v. Long, 253 F.3d 494, 503 (9th

Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by

striking unexhausted claims). This is not so, however, where the petitioner would be procedurally barred

from returning to state court to address the unexhausted claims.

A *habeas corpus* claim is barred from federal review if the petitioner has failed to exhaust state

remedies and the state's highest court would now find the claim to be procedurally barred. Coleman, 501

U.S. 735 n.1.  To give litigants "a fair opportunity to comply with known procedural rules, the controlling state procedural bar is the one in place at the time the claim should have been raised." Calderon v. U.S. District Court for the Eastern District of California, 103 F.3d 72, 75 (9th Cir. 1996).  Thus, "[o]nly if the bar is 'firmly established and regularly followed' at that time will it serve as an adequate ground to foreclose federal review." Id.

Since 1989, Washington has had a one-year period of limitation within which a conviction or sentence may be collaterally attacked:

> No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.

RCW 10.73.090(1).  Although Washington state law also provides six statutory exceptions to the above time limit, none of those exceptions apply in this case.  See RCW 10.73.100.  Here, petitioner's conviction became final on February 8, 2005, the date the Washington State Court of Appeals issued its mandate, stating that it's decision affirming petitioner's conviction became the decision terminating review. Record, Exhibit 8; RCW 10.73.090(3).

Petitioner thus will be entitled to federal *habeas corpus* review only if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." See Boyd v. Thompson, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing Coleman, 501 U.S. at 750).  To satisfy the "cause" prong, petitioner must show that "some objective factor external to the defense" prevented him from complying with the state's procedural rule. McCleskey, 499 U.S. at 493 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  Objective factors constituting "cause" include "interference by officials" making compliance with the procedural rule impracticable, and "a showing that the factual or legal basis" for the claims "was not reasonably available." Id. at 493-94 (internal quotes omitted).

Constitutionally ineffective assistance of counsel also may constitute cause, but any attorney error short of that will not excuse procedural default. Id. at 494.  The mere fact that a petitioner is *pro se* or lacks knowledge of the law, furthermore, is not sufficient to satisfy the cause prong.  That is, "[w]hen a pro se petitioner is able to apply for post-conviction relief to a state court, the petitioner must be held accountable for failure to timely pursue his remedy to the state supreme court." Hughes, 800 F.2d at 909 (finding petitioner's claims of illiteracy and lack of help in appealing post-conviction petition, though

1    unfortunate, to be insufficient to meet cause standard); <u>Boyd</u>, 147 F.3d at 1126-27.

2          Once a petitioner establishes cause, he must show "'actual prejudice' resulting from the errors of

3    which he complains." <u>Allen v. Ornoski</u>, 435 F.3d 946, 956 (9th Cir. 2006) (quoting <u>McCleskey</u>, 499 U.S.

4    at 494 (quoting <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982))).  Such prejudice exists if the alleged

5    errors worked to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error

6    of constitutional dimensions." <u>Frady</u>, 456 U.S. at 170 (emphasis in original).  In the alternative, a *habeas*

7    *corpus* petition may be granted without a showing of cause in those "extraordinary instances when a

8    constitutional violation probably has caused the conviction of one innocent of the crime." <u>McCleskey</u>, 499

9    U.S. at 494; <u>Murray</u>, 477 U.S. at 495-96 (in extraordinary case, where constitutional violation has

10   probably resulted in conviction of one who is actually innocent, federal *habeas* court may grant petition

11   even in absence of showing of cause).

12         Here, petitioner makes no showing that some objective factor external to his defense prevented

13   him from complying with Washington's procedural bar rule.  Because petitioner "cannot establish any

14   reason, external to him, to excuse his procedural default," this Court need not address the issue of actual

15   prejudice. <u>Boyd</u>, 147 F.3d at 1127; <u>Thomas v. Lewis</u>, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991) (finding of

16   lack of cause eliminates court's need to discuss whether petitioner was prejudiced).  In addition, petitioner

17   has not shown this is one of those extraordinary instances where a constitutional violation probably has

18   caused the conviction of one who is actually innocent, such that his petition should be granted despite the

19   absence of a showing of cause. <u>McCleskey</u>, 499 U.S. at 494; <u>Murray</u>, 477 U.S. at 495-96.

20         Relying on <u>Sandgathe v. Maass</u>, 314 F.3d 371 (9th Cir. 2002), petitioner argues that he should not

21   be procedurally faulted in this case.  Specifically, petitioner points to the following language employed by

22   the Ninth Circuit in that case:

23              Where a court has in fact ruled on a claim, there is no possibility of "friction between
                the state and federal court systems" caused by the "unseem[liness]' of a federal district
24              court's overturning a state court conviction without the state court's having had an
                opportunity to correct the constitutional violation in the first instance."
25
     <u>Id.</u> at 377 (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999)).  In <u>Sandgathe</u>, however, the state
26
     court "expressly included federal constitutional claims" in its post-conviction ruling. <u>Id.</u>  Thus, the Court
27
     of Appeals found there to be "no point in asking whether a state court had a 'full and fair opportunity to
28
     resolve federal constitutional claims,' . . . when the state court in fact did so." <u>Id.</u> at 377 (quoting

1  O'Sullivan, 526 U.S. at 845).  As discussed above, though, the state courts did not actually rule on the

2  federal nature of petitioner's claims.  As such, Sandgathe is inapposite here.

3  　　　　Petitioner nevertheless argues that because his appellate counsel had argued that a constitutional

4  violation had occurred, he thereby submitted a "constitutional question," which "the state court eventually

5  addressed by denying his appeal." (Dkt. #32, pp. 6-7).  Thus, petitioner asserts, he in fact did present his

6  second and third habeas corpus grounds as federal claims.  In support of this position, petitioner cites to

7  Horsley v. Alabama, 45 F.3d 1486 (11th Cir. 1995), in which the Eleventh Circuit – as the Ninth Circuit

8  did in Sandgrathe – held that "[w]hen a state court decides a constitutional question, even though it does

9  not have to, the considerations of comity and federalism which would ordinarily preclude federal review

10  of procedurally defaulted issues no longer apply." 45 F.3d at 1489-90 (decision by state court to raise and

11  answer constitutional question sua sponte will permit subsequent federal habeas review).

12  　　　　For the same reasons Sandgrathe is inapposite here, however, so too is Horsely.  As in Sandgrathe,

13  the post-conviction state court itself raised a federal constitutional issue.  See Horsely, 45 F.3d at 1489-90.

14  Thus, even though petitioner had not raised that issue himself, the state court on its own addressed it, and

15  therefore subsequent federal habeas corpus review was deemed to be appropriate.  In this case, though,

16  again not only did petitioner fail to raise any of his first three grounds as federal claims in the state courts,

17  but the state courts themselves did not move to address them as such.  Accordingly, Horsely does not help

18  petitioner here either.  The same is true in regard to the other cases petitioner cites, as in those cases the

19  petitioner either did in fact raise a federal claim or the state court addressed it as such. See Gall v. Parker,

20  231 F.3d 265 (6th Cir. 2000); Smith v. Gibson, 197 F.3d 454 (10th Cir. 1999); Hooks v. Ward, 184 F.3d

21  1206 (10th Cir. 1999); Hadley v. Caspari, 36 F.3d 51 (8th Cir. 1994).

22  　　　　Lastly, petitioner reiterates his argument that to the extent grounds (1), (2) and (3) are procedurally

23  defaulted, this is due at least in part to the ineffective and incompetent representation he received from his

24  appellate counsel.  As discussed above, however, petitioner has failed to establish that the representation

25  he received from his appellate counsel was constitutionally defective.  Petitioner also requests that in the

26  event his reasoning on this issue is not adopted, the Court should hold his appellate counsel responsible

27  for failing to present the above grounds as federal claims, and provide him with the opportunity to exhaust

28  his state court remedies by issuing a stay and abeyance in this matter.  Again, as no fault on the part of his

appellate counsel has been shown here, the Court will not hold him responsible for any failure to exhaust,

1    even if the Court could do so and even if it was clear what petitioner means by that. The Court also will

2    not grant petitioner a stay and abeyance, as any attempt by petitioner to exhaust his state court remedies at

3    this time would be futile, given that the above grounds are now procedurally defaulted.

4    V.       The Trial Court's Instructions on Consent Were Not Constitutionally Impermissible

5            The fact that a jury instruction is "allegedly incorrect under state law is not a basis for" granting

6    *habeas corpus* relief. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Indeed, "[o]utside of the capital

7    [punishment] context," the Supreme Court has "never said that the possibility of a jury misapplying state

8    law gives rise to federal constitutional error." Gilmore v. Taylor, 508 U.S. 333, 342 (1993) (instructions

9    containing errors of state law may not form basis for federal *habeas corpus* relief). "[S]tate courts are the

10   ultimate expositors of state law," and federal courts "are bound by their constructions except in extreme

11   circumstances." Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975) ("On rare occasions the Court has re-

12   examined a state-court interpretation of state law when it appears to be an 'obvious subterfuge to evade

13   consideration of a federal issue.'") (citation omitted).

14          Federal courts, therefore, "do not grant relief . . . simply because the instructions may have been

15   deficient" in some way. Estelle, 502 U.S. at 72. Rather, the sole question for consideration is "whether

16   the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

17   process," and "not merely that the instruction is undesirable, erroneous, or even 'universally

18   condemned.'" Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); see also Estelle, 502 U.S. at 72;

19   Henderson v. Kibbe, 431 U.S. 145, 153 (1977); Carriger v. Lewis, 971 F.2d 329, 334 (9th Cir. 1992) ("It

20   is not sufficient that the instruction is erroneous; rather petitioner must establish that there was a

21   reasonable likelihood that the jury applied the instruction in a way that violated a constitutional right.").

22          The test to be employed in determining whether federal *habeas corpus* relief should be granted, is

23   "whether the jury instruction "resulted in an error that 'had substantial and injurious effect or influence in

24   determining the jury's verdict.'" Shumway v. Payne, 223 F.3d 982, 986 (9th Cir. 2000) (quoting Brecht v.

25   Abrahamson, 507 U.S. 619, 623 (1993)). Under this test, federal *habeas corpus* relief will not be granted

26   unless the petitioner can establish the instruction "resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637.

27   In reviewing the particular jury instruction at issue, it must be kept in mind that "the instruction 'may not

28   be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and

     the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 494 U.S. at 147). In addition, the United States

Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Estelle, 502 U.S. at 72-73 (citation omitted).

Petitioner argues the trial court gave the jury ambiguous and erroneous instructions concerning the term "consent" as used in regard to the crimes of second and third degree rape. (Dkt. #16, pp. 12-15). The Washington State Court of Appeals addressed this issue in relevant part as follows:

> The trial court instructed the jury that Petitioner had the burden of proving the affirmative defense of consent to the second degree rape charge but that the State had the burden of proving lack of consent as an element of the third degree rape charge. Petitioner argues that such an instruction was confusing and unfairly shifted the burden to him to disprove an element of second degree rape, forcible compulsion. . . .
> . . . [T]he controlling authority of *State v. Camara*, 113 Wn.2d 631, 636-40, 781 P.3d 483 (1989) . . . holds that consent is an affirmative defense to second degree rape on which the defendant bears the burden of proof. . . .
> Petitioner's argument that the trial court erred by giving the instruction . . . fails. *Camara* holds that consent is an affirmative defense to second degree rape, which the defendant must prove by a preponderance of the evidence. The challenged instruction told the jury exactly that. In addition, the challenged instruction made it clear that the State bore the burden of proving beyond a reasonable doubt the element of forcible compulsion. And the challenged instruction placed on the State the burden of proving the element of lack of consent for the charge of third degree rape, as required by the statute defining that crime. *See* RCW 9A.44.060(1)(a). While the nature *of the charges* made the burdens of the parties confusing, the *instruction* did not add to that inherent confusion and accurately stated the law. *See Camara*, 113 Wn.2d at 640. The trial court did not err. *See State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999) (instructions not erroneous when, as a whole, they accurately state the law, do not mislead, and permit argument of the defense theory).

Record, Exhibit 12, pp. 10-11.

The undersigned finds the state court's decision concerning the trial court's instruction on consent was not contrary to and did not involve "an unreasonable application of, clearly established federal law," nor was it "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Petitioner first argues the language of the instruction was internally inconsistent and ambiguous, thereby causing the jury to become confused and mislead. He also argues that the instruction misstated the law. But, as noted above, although a jury instruction may be undesirable, erroneous or even "universally condemned," this alone is insufficient to establish a constitutional violation, nor will an error of state law entitle petitioner to a grant of federal *habeas corpus* relief. A jury, furthermore, "is presumed to follow its instructions." Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

As pointed out by respondent, petitioner also may be arguing that the instruction impermissibly shifted the burden of proof in violation of his constitutional rights. (Dkt. #16, pp. 14-15). As found by the

court of appeals, however, in Washington consent is an affirmative defense to second degree rape which the defendant must prove, and the state has the burden of proving the element of lack of consent for third degree rape. See Compara, 113 Wn.2d at 636-40; RCW 9A.44.060(1)(a). Because the instructions given by the trial court were clear as to each criminal charge and accurately stated the law with respect thereto, the state courts were not remiss in finding no error here. See Patterson v. New York, 432 U.S. 197, 206 (1977) (finding that jury instructions on charge of murder were in accordance with state law, that state carried its burden of proving every element of crime beyond reasonable doubt, and that requirement that affirmative defense of insanity be demonstrated by preponderance of evidence did not violate defendant's due process rights); Tili, 139 Wn.2d at 126; (Dkt. #16-4, Exhibit B, Instruction No. 11).

Lastly, petitioner appears to be arguing that the trial court failed to cure the confusion surrounding the ambiguous nature of the instruction – by merely telling the jury to "re-read the instructions as a whole" – in response to the jury's question regarding the difference in the meaning of consent between the charges of second and third degree rape, and its request for clarification with respect thereto. See (Dkt. #16-4, Exhibit B, Inquiry From the Jury and Court's Response). Again, however, as pointed out by respondent, the United States Supreme Court has found this approach to a jury's request for a clarification of the law from the trial court to be constitutionally permissible:

> Given that petitioner's jury was adequately instructed, and given that the trial judge responded to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry, the question becomes whether the Constitution requires more. We hold that it does not.

Weeks, 528 U.S. at 234. In addition, "a jury is presumed to understand a judge's answer to its question." Id. Indeed, "[t]o presume otherwise would require reversal every time a jury inquires about a matter of constitutional significance, regardless of the judge's answer." Id. Further, here, as in Weeks, the jury "did not inform the court that after reading" the instructions as a whole that "it still did not understand its role." Id. As such, the undersigned finds the trial court did not further err here.

VI.     Petitioner's Defense Counsel Did Not Provide Ineffective Representation

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Strickland v. Washington, 466 U.S. 668, 686 (1984) (right to counsel is right to effective assistance of counsel). When ineffective assistance of counsel is claimed, the standard to be used is "whether counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 686.

Counsel's representation must have been "so defective as to require reversal of a conviction." <u>Id.</u> at 687; <u>see also</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) ("Only those petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ."). To prevail on such a claim, the defendant must show that "counsel's performance was deficient," and that "the deficient performance prejudiced the defense." <u>Strickland</u>, 466 U.A. at 687. Thus, unless both of these showings are made, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." <u>Id.</u>

There also is a "strong presumption" that the performance of counsel "falls within the 'wide range of professional assistance.'" <u>Kimmelman</u>, 477 U.S. at 381. With respect to attorney performance, the proper standard to be used "is that of reasonably effective assistance" under "prevailing professional norms." <u>Strickland</u>, 466 U.S. at 687-88. Therefore, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688; <u>United States v. Vincent</u>, 758 F.2d 379, 381 (9th Cir. 1985) (defendant must show counsel's errors reflect failure to exercise skill, judgment or diligence of reasonably competent attorney).

Counsel, furthermore, has "wide latitude in deciding how best to represent a client" and "making tactical decisions." <u>Yarborough</u>, 540 U.S. at 5; <u>Strickland</u>, 466 U.S. at 689. The competence of counsel "is presumed," and thus "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." <u>Kimmelman</u>, 477 U.S. at 381, 384. Not surprisingly, therefore, "the standard of review is highly deferential." <u>Id.</u> at 381. As the Supreme Court has explained:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

<u>Strickland</u>, 466 U.S. at 689 (citations omitted).

As noted above, to prevail on an ineffective assistance of counsel claim, the defendant also must "affirmatively prove prejudice." Id. at 693. In other words, it is not enough to show that "particular errors of counsel were unreasonable," and that they had "some conceivable effect on the outcome" of the trial. Id. Rather, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is that which is "sufficient to undermine confidence in the outcome." Id. When determining whether prejudice exists, the court "'must consider the totality of the evidence before the judge or jury.'" Kimmelman, 477 U.S. at 381 (citing Strickland, 466 U.S. at 695).

Petitioner argues the representation defense counsel provided at his trial was ineffective for failing to call two witnesses to testify at his trial regarding the events at the time the crimes with which petitioner was charged occurred. Specifically, petitioner claims these witnesses were able and willing to testify, but defense counsel failed to interview them or call them as witnesses, even though they had knowledge that was essential to his defense. Further, petitioner asserts not only did defense counsel not make any attempt to determine what relevant testimony they had – despite petitioner having informed him of their existence, contact information and potential testimony – but defense counsel apparently instructed them to leave the courthouse during the course of petitioner's trial. Accordingly, petitioner argues defense counsel failed to conduct a reasonable investigation.

With respect to this issue, the Washington State Court of Appeals found as follows:

> Petitioner presents this court with affidavits from two witnesses who he claims his lawyer knew about but refused to interview or present at trial: Michael Brown and Courtney Miles. In their affidavits, the witnesses claim that C.A.T. was happily kissing Petitioner and then willingly went into the bedroom to have sex. Based on the sounds they claim to have then heard, the witnesses say the sex was consensual. Further, the witnesses claim C.A.T. was happy when she emerged from the bedroom and became upset only when she overheard Petitioner insult her.
>
> The witness affidavits also claim that they called Petitioner's lawyer before trial but that he never contacted them. Petitioner presents an affidavit from Miles's mother to the same effect. The various affidavits reveal that Brown and Miles were present during some portion of Petitioner's multi-day trial. In an affidavit, Petitioner's father states that sometime during trial, Petitioner's lawyer told him that the lawyer would not use Brown and Miles as witnesses because they looked like "thugs" and their testimony would have a negative impact. Although Petitioner's family urged that the testimony was vital to the defense, Petitioner's lawyer disagreed and wanted the witnesses to leave the court house. From this, Petitioner's father infers that the lawyer actually meant that he would not call Brown and Miles because they were black and the jurors were white. Petitioner's own affidavit, along with that of Miles, recites the father's inference as fact.
>
> Review of the trial record and the records submitted with the State's Response reveal additional facts, however. First, prior to trial, both the State and the Petitioner agreed that Brown and Miles might be called as witnesses. Petitioner's lawyer told the

court that the State was trying to subpoena both men and that he was "trying to get them into my office also."

As part of pre-trial discovery, the State provided police reports containing interviews of both Brown and Miles shortly after the charged incident. Brown's version of events at that time was not entirely helpful, as he admitted that Petitioner made two efforts to get C.A.T. to enter the bedroom, he did not know for certain what happened in the bedroom, he asked C.A.T. if she was crying when she emerged, and Petitioner told Brown he needed to use him as an "alibi." In his interview, Miles, contrary to Brown, claimed that the bedroom door was open and he actually saw C.A.T. engaged in consensual sex with Petitioner; he also referred to C.A.T. as a "bitch" and a "ho." The police interviews of Brown and Miles are not consistent with each other. More importantly, the police interviews conflict at key points with the affidavits filed with the current petition, and the affidavits are somewhat inconsistent with each other. The contents of those affidavits are what the witnesses claim that Petitioner's lawyer prevented them from presenting at trial.

In addition, the State provided Petitioner's trial lawyer with additional police reports identifying at least Petitioner and Brown as long-time members of a street gang, the "Insane Hustling Gangsters." The reports revealed that Petitioner and Brown had participated together in gang-related vandalism and assault.[2] Further, Brown had a prior conviction for tampering with a witness, admissible by right under ER 609(a)(2). [court of appeals' footnote 2] Indeed, Petitioner's lawyer moved in limine to prohibit the State from presenting evidence of Petitioner's participation in Brown's gang-related activity and crimes. The court stated it would decide whether the State could present such evidence *if Brown testified*.

In pre-trial interviews, C.A.T. had reported that Miles and his friends were harassing her. Without Miles as a listed witness, Petitioner's lawyer successfully moved in limine to prevent C.A.T. from so testifying. Further, both C.A.T. and her mother had claimed that Miles and Brown had made various out-of-court statements apparently damaging to the defense; Petitioner's lawyer successfully moved the court to exclude those statements as well. And Miles had been convicted of trespassing at Brown's apartment after the rape incident but before Petitioner's trial, rendering uncertain whether Miles remained friendly to the defense.

Petitioner's lawyer pursued a strategy of attacking the State's evidence of forcible compulsion and lack of consent. As noted above, C.A.T. testified that her level of intoxication prevented her from effectively resisting. In addition to extensive cross-examination of C.A.T.'s lack of force and C.A.T.'s inconsistencies, Petitioner's lawyer successfully introduced into evidence C.A.T.'s routine use of large quantities of alcohol. Petitioner's lawyer also obtained and presented expert medical testimony[3] regarding C.A.T.'s likely low level of impairment given her routine consumption of more alcohol than she consumed at the apartment. Petitioner's claim that C.A.T. consented to sex with him was presented through a State witness, Detective Knox. And because Petitioner followed his lawyer's advice not to testify, the jury did not learn about his prior robbery conviction.

Petitioner fails to rebut our presumption that his lawyer effectively assisted him, so we need not remand for a reference hearing. It is clear that Petitioner's lawyer knew about the potential testimony of Miles and Brown. It is equally clear that he made a reasonable strategic choice not to call them as witnesses. It is likely that he made that

---

[2]"[Court of appeals' footnote 1] Petitioner correctly notes that Brown's prior assault and vandalism convictions would not be admissible by right under ER 609(a)(2). But Petitioner's lawyer would have known that the State might be able to cross-examine Brown regarding them (and other gang activities with Petitioner) under ER 608(b). And given Petitioner's direct involvement in Brown's criminal gang activity, the State might also have argued Brown's convictions were probative of a motive to lie for Petitioner and sought admission under ER 609(a)(1)." Id. at p. 7 (internal citations omitted).

[3]"[Court of appeals' footnote 3] It is worth noting that the defense medical expert, Dr. Hamm, testified that Petitioner's lawyer provided him with a statement from Miles or someone else present in the apartment." Id. at p. 8 (citation omitted).

choice because (1) their statements were inconsistent with each other and with their statements to the police, (2) the State would be able to reveal Brown's witness tampering conviction, (3) the State would attempt to reveal Petitioner's participation in their other criminal and gang activities, (4) the State would present evidence of Miles's threat to C.A.T., and (5) the State would attempt to present evidence of the witnesses' inconsistent or damaging out-of-court statements.[4]  Given that Petitioner's lawyer pursued a reasonable strategy focused on challenging C.A.T.'s consistency and believability, it was reasonable not to also present inconsistent witnesses who would inevitably return the focus to Petitioner's associations and past behavior.

Record, Exhibit 12, pp. 5-9 (footnote 2 and internal citations omitted).

The state court's determination that defense counsel's actions, or lack thereof, did not amount to ineffective representation here was not contrary to and did not involve "an unreasonable application of, clearly established federal law," nor was it "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).  As noted above, there is a strong presumption that the performance of defense counsel fell within the wide range of professional assistance.  The state court correctly noted that the actions of defense counsel, or, again, lack thereof, of which petitioner complains concerning the witnesses certainly could have been part of a reasonable trial strategy in defending him.  In other words, petitioner has not rebutted the highly deferential standard that defense counsel's competence is presumed.  Nor, given the state court's discussion above and the evidence in the record, has petitioner shown that there is a reasonable probability that, but for defense counsel's alleged unprofessional conduct in not calling the two witnesses, the result of his criminal trial would have been different.  As such, this ground for *habeas corpus* relief is without merit as well.

<u>CONCLUSION</u>

For the reasons set forth above, petitioner has failed to show that he is entitled to federal *habeas corpus* relief.  Accordingly, the Court should deny petitioner's petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit

---

[4]"[Court of appeals' footnote 4] Obviously, the record does not reveal how the witnesses were dressed or groomed.  And we do not decide whether Petitioner's lawyer rejected the witnesses based on their appearance.  But a lawyer can make a valid strategic choice not to present to a jury witnesses who look "thugs."  Whether a witness has such an appearance does *not* depend on race.  We also noted that *if* Petitioner's lawyer made this statement, he may have been referring to the overall impact of the witness testimony, not merely physical appearance.  As noted, presenting the witness testimony might have allowed the State to prove the witnesses were involved in criminal activity with Petitioner." <u>Id.</u> at p. 9.

REPORT AND RECOMMENDATION

Page - 21

imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set this matter for consideration on **September 12, 2008**, as noted in the caption.

DATED this 20th day of August, 2008.


Karen L. Strombom
United States Magistrate Judge